

# THE ATTORNEY GENERAL

## OF TEXAS

PRICE DANIEL
ATTORNEY GENERAL

AUSTIN, TEXAS

April 4, 1950

Hon. Robert S. Calvert
Comptroller of Public
Accounts
Austin, Texas

Opinion No. V-1030.

Re: The arrest and mileage fees
of a sheriff under the vari-
ous circumstances submitted.

Dear Sir:

Your request for an opinion is as follows:

"This Department has received fee ac-
counts from sheriffs, in counties where the
other county officers in said county are
paid on a fee basis, as follows:

"1. A defendant was convicted in McCul-
loch County of felony theft and sentenced to
five years suspended sentence. The Sheriff
made claim for $3.00 arrest fee and was paid
that amount, no mileage fees were earned or
claimed. The court subsequently revoked the
suspended sentence, and the sheriff received
a bench warrant from the court directing him
to call upon the proper authorities of anoth-
er county and pick up the defendant from the
jail there and convey him to the McCulloch
County jail. The sheriff now makes a claim
for conveyance mileage under the provisions
of Article 1030, C.C.P. for this service. Is
this mileage properly payable? Would the
mileage be payable if the service had been
performed on a capias issued under the pro-
visions of Article 779, C.C.P.?

"2. A defendant was convicted in Mot-
ley County of attempted arson and sentenced
one to four years in the penitentiary and
was placed on probation. The sheriff claim-
ed and was paid both arrest fee and mileage
fee for services performed before sentence
was given the defendant. The sheriff, sub-
sequently, traveled 85 miles in arresting

the defendant and conveying him back to his county on a warrant for violation of the probation. The sheriff claims an arrest fee and mileage fee for this service. Are either of these fees properly payable? Would a mileage fee be payable if the service had been performed on a bench warrant?

"This Department has long construed a case to be disposed of as far as the payment of fees is concerned when a suspended sentence is rendered. In this connection, I am enclosing an opinion of your Department dated March 17, 1913, for your convenience. I also am enclosing a copy of an opinion dated August 1, 1934, which deals with a similar situation."

We quote the following provisions of Articles 779, 781b, 1020 and 1030, V.C.C.P.:

"Art. 779 . . .

"1. Upon the final conviction of the defendant of any other felony, pending the suspension of sentence, the court granting such suspension shall cause a capias to issue for the arrest of the defendant if he is not then in the custody of such court, and during a term of the court, shall pronounce sentence upon the original judgment of conviction, and shall cumulate the punishment of the first with the punishment of any subsequent conviction or convictions, and in such cases no new trial shall be granted in the first conviction, nor shall the validity or finality of the first conviction be attacked by appeal or otherwise, and no right of appeal shall exist to test the validity of the judgment of conviction, sentence upon which was suspended.

"2. Upon the final conviction of the defendant of any character or grade of the offenses of theft, embezzlement, swindling, conversion, theft by bailee, or any fraudulent acquisition of personal property, pending the suspension of sentence, the court granting such suspension may cause a capias to issue for the arrest of the defendant, if he is not

then in the custody of such court, and during the term of the court may pronounce sentence upon the original judgment of conviction, and may cumulate the punishment of the first with the punishment of any such subsequent conviction or convictions, and in such cases no new trial shall be granted in the first conviction. The term 'may,' as herein used, shall not be construed to be mandatory."

"Art. 781b . . .

"Sec. 5. At any time during the period of probation such courts may issue a warrant for violation of any of the conditions of the probation and cause the defendant to be arrested. Any probation and parole officer, police officer or other officer with power of arrest may arrest such defendant without a warrant upon the request of the judge of such courts. A probationer so arrested may be detained in the county jail or other appropriate place of detention until he can be taken before the court. Such probation and parole officer shall forthwith report such arrest and detention to such courts and submit in writing a report showing in what manner the probationer has violated his probation. Thereupon, the court shall cause the defendant to be brought before it and, after a hearing without a jury, may continue or revoke the probation and shall in such case proceed to deal with the case as if there had been no probation. If the defendant is arrested in a county or district in the State of Texas other than that in which he was convicted, the probation and parole officer, upon the written request of the sentencing judge, shall furnish such courts a report concerning said probationer, and such courts shall have authority after a hearing to continue or revoke probation and shall in such case proceed to deal with the case as if there had been no probation. In such case, the clerk of the court in which the order of revocation is issued shall forward a transcript of such order to the clerk of the court of original jurisdiction, and the clerk of that court shall proceed as if the order of revocation had been issued by the court of original

jurisdiction. Any probationer who removes himself from the State of Texas without permission of the court placing him on probation or the court to which jurisdiction he has been transferred shall be deemed and considered a fugitive from justice and shall be subject to extradition as now provided by law. No part of the time that the defendant is on probation shall be considered as any part of the time that he shall be sentenced to serve. The right of the probationer to appeal to the Court of Criminal Appeals for a review of the trial and conviction, as provided by law shall be accorded the probationer at the time he is placed on probation. When he is notified that his probation is revoked for violation of the conditions of probation and he is called on to serve a jail or penitentiary sentence he may appeal the revocation."

"Sec. 31. For the purpose of determining when fees are to be paid to any officer or office, the placing of the defendant on probation shall be considered a final disposition of that case, without the necessity of waiting for the termination of the period of probation or suspension of sentence."

"Art. 1020 . . .

"Sheriffs and Constables serving process and attending any examining court in the examination of any felony case, shall be entitled to such fees as are fixed by law for similar services in misdemeanor cases in County Court to be paid by the State, not to exceed Four and No/100 ($4.00) Dollars in any one case, and mileage actually and necessarily traveled in going to the place of arrest, and for conveying the prisoner or prisoners to jail as provided in Articles 1029 and 1030, Code of Criminal Procedure, as the facts may be, but no mileage whatever shall be paid for summoning or attaching witnesses in the county where case is pending. Provided no sheriff or constable shall receive from the State any additional mileage for any subsequent arrest of a defendant in the same case, or in any other case in an examining court or in any district

*court based upon the same charge or upon the same criminal act, or growing out of the same criminal transaction, whether the arrest is made with or without a warrant, or before or after indictment, and in no event shall he be allowed to duplicate his fees for mileage for making arrests, with or without warrant, or when two or more warrants of arrest or capiases are served or could have been served on the same defendant on any one day.*"(Emphasis added.)

"Art. 1030 . . .

"In each county where there have been cast at the preceding presidential election less than 3000 votes, the sheriff or constable shall receive the following fees when the charge is a felony:

"1. For executing each warrant of arrest or capias, or for making arrest without warrant, when authorized by law, the sum of one dollar; and five cents for each mile actually and necessarily traveled in going to place of arrest, and for conveying the prisoner or prisoners to jail, mileage, as provided for in subdivision 4 shall be allowed; provided, that in counties that have a population of less than forty thousand inhabitants, as shown by the preceding Federal census, the following fees shall apply: For executing each warrant of arrest or capias, or for making arrest without warrant, when authorized by law, three dollars and fifteen cents for each mile actually and necessarily traveled in going to place of arrest, and for conveying prisoners to jail, mileage as provided for in subdivision 4 shall be allowed; and one dollar shall be allowed for the approval of a bond."

"4. For removing a prisoner, for each mile going and coming, including guards and all other expenses, when traveling by railroad, ten cents; when traveling otherwise than by railroad, fifteen cents; provided, that when more than one prisoner is removed at the same time, in addition to the forego-

ing, he shall only be allowed ten cents a
mile for each additional prisoner."

Where a defendant convicted of a felony is
granted a suspended sentence and during the period of
suspension he is finally convicted of a felony or some
other crime named in Article 779 which requires the
court to revoke the suspended sentence, the court in
which he was originally convicted is authorized to is-
sue a capias for his arrest under the provisions of
Article 779. If a defendant convicted of a felony is
placed on probation and he later violates any provisions
of the probation, the court granting the probation is
authorized by Article 781b to issue a warrant for his
arrest.

In Attorney General Opinion No. 3011, dated
December 13, 1937, and approved in Opinion No. V-1008,
it was held that a bench warrant is not contemplated as
a warrant of arrest or capias as provided in subdivi-
sion 1 of Article 1029, but it is merely an order by
the District Judge for the sheriff to proceed to a cer-
tain place and get a prisoner whom he has already had
in custody and upon whom he has already served a capias
or warrant of arrest. We quote the following from said
opinion:

"A bench warrant is a common law process
not defined by the Statute of Texas, and al-
though the courts in Oxford v. Berry, 170 N.W.
83, 204 Mich. 197, and in Ex Parte Lowe, 251
S.W. 506, have defined a bench warrant as a
warrant of arrest, they further say that it is
sometimes used to bring a convict confined in
the penitentiary to trial in another case, and
we are of the opinion that a bench warrant is
not contemplated as being a warrant of arrest
or capias as provided in Subdivision 1 of Ar-
ticle 1029, but it is merely an order by the
District Judge in cases such as those submit-
ted in your question for the sheriff to pro-
ceed to a certain place and get a prisoner
whom he has already had in custody and upon
whom he has already served the capias or war-
rant of arrest and returned the body of such
prisoner to the court issuing the order. It
is not an ordinary warrant of arrest direct-
ing the sheriff to arrest the person named

therein where ever found, but on the other
hand it is an order directed to the officer
or person having custody of the prisoner or-
dering such officer or other person to de-
liver the prisoner to the sheriff for the
purpose of conveying him to the court issu-
ing the warrant."

In Gaines v. State, 53 S.W. 623 (Tex. Crim.
1899), the court in discussing the effect of a bench
warrant, stated:

"Appellant excepted to the action of the
court in having him brought from the peniten-
tiary at Rusk (he being confined there on an-
other case) to stand his trial in this case,
it being contended that it was not competent
for the state to do this. There is nothing
in this contention. While we know of no pro-
cedure authorized by legislation to bring a
defendant from the penitentiary to some court
for trial in another case, yet there is no
law to the contrary, and such has been the
usual practice; and we fail to see how a de-
fendant can be heard to complain that the pen-
itentiary authorities surrendered him to the
local authorities for trial on some indictment
pending against him. The legislature has au-
thorized the penitentiary board to make cer-
tain rules in regard to the conduct of the
convicts confined and under their charge, and
we understand the prison authorities have pro-
vided a rule recognizing the authority of dis-
trict judges to issue writs for prisoners con-
fined in the penitentiary to be brought before
the court for trial in any case that may be
pending against them. This would seem to be
sufficient authority to bring the prisoner be-
fore the court."

Although a bench warrant may at times be used
as a warrant of arrest (Ex Parte Lowe, 251, S.W.506, Tex.
Crim. 1923), it is our opinion, in view of the foregoing,
that as a matter of practice the courts of this State do
not use the bench warrant for the purpose of arrest but
on the other hand it is used as an order directed to the
person or officer having custody of the prisoner order-
ing such officer or other person to deliver the prisoner
to the sheriff for the purpose of conveying him to the

Hon. Robert S. Calvert, page 8 (V-1030)

court issuing the warrant. Therefore, a bench warrant as used by the courts of this State is not a warrant of arrest within the meaning of Article 1020, V.C.C.P.

In Attorney General Opinion dated August 1, 1934, to the Comptroller, this office was construing the above quoted provisions of Article 1020. The question was whether or not said provisions prohibited the payment of mileage fees to a sheriff who executes a capias under Article 819, V.C.C.P., which provides that a capias for the arrest of the defendant may be issued where the Court of Criminal Appeals has affirmed a conviction in a felony case. It was held in this opinion that the prohibition contained in Article 1020 was not limited to examining trials but applied to any subsequent arrest in the same case or growing out of the same criminal transaction whether the arrest was made before or after indictment.

Therefore, it is our opinion that the provisions of Article 1020 would apply to subsequent arrests of a defendant for violation of his suspended sentence or probation, since it is an arrest in the same case or the arrest arises out of the same criminal transaction.

The facts contained in your first question reveal that the sheriff received the bench warrant directing him to call upon the proper authorities of another county and pick up the defendant and convey him to the McCulloch County jail. As noted above, this does not constitute a warrant of arrest within the meaning of Article 1020, and since the prohibition contained in Article 1020 applies to "any subsequent arrest of a defendant in the same case;" this prohibition would not apply. Furthermore, the prohibition in Article 1020 applies to "additional mileage." Therefore, the prohibition does not apply where the sheriff in question has not received, up to that time, any mileage, and you are advised that he is entitled to mileage fees provided for in subdivision 4 of Article 1030 for removing a prisoner.

If a capias were issued rather than a bench warrant, the sheriff would be entitled to mileage fees provided for in Article 1030 unless he has already been paid mileage fees in a prior arrest in the same case or in an arrest arising out of the same criminal transaction.

Section 5 of Article 781b above quoted, shows that a revocation of probation for a violation of any of the conditions of the probation is a continuation of the original case. Therefore an arrest for violation of probation is an arrest arising out of the same case or one growing out of the same criminal transaction within the meaning of Article 1020.

The facts in your second question show that the sheriff has received arrest fees and mileage fees for services performed before the original sentence. Therefore, it is our opinion that the provisions of Article 1020 prohibit the sheriff from receiving additional mileage fees for making an arrest of the defendant and conveying him back to his county on a warrant of arrest for violation of the probation.

If the service referred to had been performed on a bench warrant rather than a warrant of arrest as contemplated above, the sheriff would be entitled to his mileage fees under the provisions of subdivision 4 of Article 1030 for the reasons stated in our answer to your first question.

## SUMMARY

The sheriff who executes a bench warrant on a defendant whose suspended sentence has been revoked or on a defendant on probation who has violated any of the conditions of the probation, is entitled to mileage fees pursuant to the provisions of subdivision 4 of Article 1030, V.C.C.P., and the prohibition contained in Article 1020, V.C.C.P., against the payment of an additional mileage fee in the same case or arising out of the same criminal transaction is not applicable. The sheriff who executes a capias on a defendant whose suspended sentence has been revoked would be entitled to mileage fees provided for in subdivision 4 of Article 1030, unless he has already been paid mileage fees in a prior arrest in the same case or in an arrest arising out of the same criminal transaction. The sheriff is not entitled to mileage fees for an arrest of the defendant violating probation where the sheriff has received arrest and mileage fees prior to the original sentence for such subsequent arrest is an arrest arising out of the

same criminal transaction. Arts. 779, 781b, 1020, and 1030, V.C.C.P.; Ex Parte Lowe, 251 S.W. 506 (Tex. Crim. 1923); Gaines v. State, 53 S.W. 623 (Tex. Crim. 1899); A.G. Opinion No. 3011, dated December 13, 1937; A.G. Opinion dated August 1, 1934, to the Comptroller; A.G. Opinion No. V-1008.

Yours very truly,

PRICE DANIEL
Attorney General

APPROVED:

J. C. Davis, Jr.
County Affairs Division

By John Reeves
John Reeves
Assistant

Charles D. Mathews
Executive Assistant

JR:mw:bh